## Case No. 1,646.

### BOOTH v. GARELLY et al.

[1 Blatchf. 247;[1] 6 N. Y. Leg. Obs. 99; Fent. Pat. 77; 1 Fish. Pat. Rep. 154.]

Circuit Court, S. D. New York. Oct. Term, 1847.

PATENTS — EXTENT OF CLAIM — ABANDONMENT— QUESTION OF FACT — SALE—WHAT AMOUNTS TO INFRINGEMENT—INJUNCTION—PREREQUISITES.

1. Where, in a patent for a new and ornamental design for figured silk buttons, under the act of August 29, 1842 (5 Stat. 543), the specification claimed the radially formed ornaments on the face of the mould of the button, combined with the mode of winding the covering of the same, substantially as set forth, and the specification described the configuration of the mould, and the winding it with various colored threads, but did not describe the process of winding the silk: *Held*, that the claim did not cover that process, but was for the arrangement of the different colored threads in the process, so as to produce the described ornaments on the button.

[Cited in Kane v. Huggins Cracker & Candy Co., 44 Fed. 292.]

2. The patentee having manufactured the buttons, and put them into market for sale two or three months before he applied for his patent: *Held*, that the question whether the design was thereby abandoned to the use of the public, was a question of fact to be settled on a trial at law.

[Cited in Anderson v. Eiler, 46 Fed. 781.]

3. The question of abandonment is, in such a case, a question of intention on the facts proved.

4. Whether the sale of the manufactured button was a sale of the design patented, quere.

5. Where, on a motion for an injunction to restrain the infringement of such patent, the novelty of the invention was denied, and it was admitted that large quantities of the buttons, in packages marked as imported from Paris,

were sold by the patentee before he applied for his patent: *Held*, that there was an implication against the patentee as the original inventor, and that an injunction ought not to be granted till the plaintiff's right was established at law.

[6. Cited in Anderson v. Eiler, 46 Fed. 781, to the point that section 7, Act Aug. 29, 1842, applies to design patents.]

In equity. This was a motion [by Don Alonzo Booth] for a provisional injunction to restrain the defendants [Julius Gross Garelly and others] from infringing the plaintiff's patent. The case is sufficiently stated in the opinion of the court. [Denied.]

Fig.4.    Fig.4.

Fig.1.    Fig.1.

Fig.5.    Fig.5.

Fig.2.    Fig.2.

Fig.6.    Fig.6.

Fig.3.    Fig.3.

Samuel Sherwood, for plaintiff.
Abijah Mann, Jr., for defendants.

NELSON, Circuit Justice. The letters patent to the plaintiff were issued July 24th, 1847, for "a new and ornamental design for figured silk buttons." The design is described as consisting of two distinct elements or characters, to be used in combination, in order to insure the beauty of the article: 1st. The configuration of the mould or block, having radial indentations thereon, forming the foundation of the button; 2d. Winding the said block with silk, in the manner thereafter described. The beauty and effect of the design, it is said, depend upon these two things, which together form the design, and without which it cannot be produced. Accompanying the patent are several drawings, representing wooden moulds, with different radial figures cut upon the faces of them, and also others wound with silk of different colors, presenting samples of figured buttons of various hues. The mode of securing the thread with which the mould is wound, to prevent the same from slipping, is particularly described, and suggestions are made that the mould can be varied to any figure desired, and also that the silk covering may be varied in its combination of colors. The process of winding the silk upon the mould is not described. Then follows the claim, which is, "the radially formed ornaments on the face of the mould of the button, combined with the mode of winding the covering of the same, substantially as set forth."

The patent is granted under the act of August 29, 1842 (5 Stat. 543, § 3), which authorizes the granting of the same for any new and original design for a manufacture, or any new and useful pattern, or any new and original shape or configuration of any article of manufacture, not before known or used by others. The invention in this case falls within the first clause of the section, if within any, as a "new and original design for a manufacture"—a design for the manufacture of an ornamental button.

It was supposed on the argument, by the counsel for the defendants, that the process of winding the mould with the silk thread constituted a part of the invention; and that if it could be shown that this was not new, but had been known and in public use before, the patent was void. This process is not described in the specification, and we are inclined to think it was not intended to be claimed. The mode of winding claimed to be new, is the arrangement of the different colored threads in the process, so as to produce what is called the radially formed ornaments on the face of the button. For this purpose and to this extent, the description, in connection with the drawings, appears to be sufficiently full and explicit, and a person of ordinary skill in the art would, probably, find no difficulty from the description as given, in working the silk ornaments of varied color and shade, upon the face of the mould.

It is admitted that the patentee manufactured these buttons and put them into the market on sale, some two or three months before he made application for his patent, and it is hence insisted, that the "design" has been abandoned to the use of the public. It is claimed, however, that in every instance of sale, he gave notice that he was preparing to apply for a patent, and intended to secure his exclusive right to the invention. The evidence on the point of abandonment raises a question of fact, which must be settled upon the trial of the suit at law, which is now pending between the parties. The seventh section of the act of March 3, 1839 (5 Stat. 354), provides that every purchaser of a newly invented machine, manufacture, or composition of matter, from the inventor, prior to his application for a patent, shall be held to possess the right to use the article, and to vend it to others to be used, but that the patent shall not be held to be invalid by reason of such prior purchase, sale or use, except on proof of abandonment of the invention to the public, or that such purchase, sale or prior use, has been for more than two years prior to the application. As the sales in this case were made but a short time before the application, the question will be upon the abandonment—a question of intention upon the facts proved.

There may be some doubt whether the sale of the manufactured button by the inventor, amounts to a sale of the thing invented within the meaning of this seventh section. If the button be regarded simply as a product of the invention, it is clear that a sale of it would not be a sale of the invention; for a sale within the provision must be a sale of the invention or patented article. The patent is not for the manufacture of a new and ornamental button, but, for a new and ornamental design in the manufacture of the article. The "design," however, is worked upon the face of the button, and may therefore, perhaps, be said to be sold with it. In this view, a sale of the button would be a sale of the "design," the thing patented, and not simply of the product of the invention.

The novelty of the invention is denied by the defendants, and it is admitted that large quantities of the article, in packages marked as imported from Paris, were sold by the patentee before his application for the patent, thereby affording an implication against him as the original inventor, and in favor of the allegation of the defendants.

Upon the whole, therefore, we shall withhold an injunction until the plaintiff's right shall have been established in the suit at law.